## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
HECTOR H. BALDERAS, Attorney General
of New Mexico,

Plaintiff/Petitioner,

v.                                                Civil Action No.: 1:14-cv-00663-KG-KK

BYRON LEE LANDAU, *et al*,

Defendants/Respondents.

## STIPULATED FINAL ORDER FOR
## PERMANENT INJUNCTION AND MONETARY RELIEF
## WITH DEFENDANT ARMAN KHOURSHIDIAN
## A/K/A AARON KHOR, A/K/A MIKE KHOR

**THIS MATTER**, having come before the Court upon a stipulated motion between

Plaintiff and Defendant Arman Khourshidian and the Court being fully advised of the claims in

issue and the proposed resolution by the parties, hereby:

**FINDS THAT**:

1.  Plaintiff, the Office of the Attorney General of New Mexico ("OAG" or "Plaintiff"
    *hereinafter)*, filed its complaint for violations of the Mortgage Assistance Relief
    Services Rule (MARS Rule), the New Mexico Unfair Practices Act (UPA), and other
    claims, and petition for injunctive relief, on July 23, 2014 [Doc. 1].   Plaintiff
    subsequently filed a First Amended Complaint on February 17, 2015 [Doc. 68] and
    has engaged in discovery thereafter.

2.  The defendants named in the initial complaint [Doc. 1] are Byron Lee Landau,
    Credence Law Group, Inc., Credence Professional Group, Inc., Scott Murakami,

Ariyo Mackay, also known as Chris Mackay, Vincenzo Ammirato II, John/Jane Does 1 through 10, Doe Corporations 1 through 10, and relief defendants Bank of America, N.A., and American Express Company. Additional defendants named in the first amended complaint [Doc. 68] are Patty Walker, Danna Jarrard, also known as Dan Grey and John Grey, Ryan William Marier, Arman Khourshidian, also known as Arman Khorshidian or Mike Khor, Prime Processing Group, LLC, Estate Law Group dot com, America Financial, Inc., Financial Consulting Corporation, State Marketing Group, Mura Consulting Corporation, Time 2 Settle, Inc., Consumer Alliance Referral Center, and relief defendant JPMorgan Chase.

3. Defendant Arman Khourshidian ("Settling Defendant"), who is also known as Mike Khor and Aaron Khor, stipulates to the entry of this Stipulated Final Order for Settlement of Claims ("Order") to resolve all matters in dispute between him and Plaintiff in this action.

4. Settling Defendant also agrees to be permanently enjoined from certain acts or practices as set forth below.

**THEREFORE, IT IS ORDERED** as follows:

1. This Court has jurisdiction over this matter and over the parties.

2. The initial complaint [Doc. 1] and the first amended complaint [Doc. 68] allege that the Defendants, including the Settling Defendant, participated in practices in violation of the Unfair Practices Act and the Mortgage Assistance Relief Services Rule ("MARS Rule"), 16 C.F.R., Section 322, re-codified as Mortgage Assistance Relief Services ("Regulation O"), 12 C.F.R., Section 1015, in connection with the advertising, marketing, promotion, or offering of mortgage assistance relief services and "arranging for others" to offer such services.

2

3.   Settling Defendant admits the factual allegations in the First Amended Complain [Doc. 68] to the extent those allegations are necessary to establish jurisdiction and render this Order enforceable and lawful.

4. Settling Defendant waives any claims they may have against Plaintiff and agrees to bear his own costs and attorneys' fees.

5.   Settling Defendant and Plaintiff waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.  **"Financial Product or Service"** means any product, service, plan, or program represented expressly or by implication to:

> 1. provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

> 2. provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

> 3. improve, repair, or arrange to improve or repair, any consumer's credit record, credit history, or credit rating; or

> 4.  provide advice or assistance to improve any consumer's credit record, credit history, or credit rating.

B.     **"Person"** means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

C.  **"Secured or unsecured debt relief product or service"** means:

1.  with respect to any mortgage, loan, debt, or obligation between a person and one or more secured or unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication to:

a. stop, prevent, or postpone any mortgage or deed of foreclosure sale for a person's dwelling, any other sale of collateral, any repossession of a person's dwelling or other collateral, or otherwise save a person's dwelling or other collateral from foreclosure repossession;

b. negotiate, obtain, or arrange a modification, or renegotiate, settle, or in an way alter any terms of the mortgage, loan, debt, or obligation, including a reduction of the amount of interest, principal balance, monthly payments, or fees owed by a person to a secured or unsecured creditor or debt collector – this includes any consumer loan, such as credit cards, lines of credit, student loans or any other consumer or household debt;

c. obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation of any kind;

d. negotiate, obtain, or arrange any extension of the period of time within which a person may (i) cure his or her default on the mortgage, loan, debt, or obligation; (ii) reinstate his or her mortgage, loan, debt, or obligation; (iii) redeem a dwelling or other collateral; (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

e. obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

4

f.  negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure; or (iii) any other disposition of a mortgage, loan, debt, or obligation, other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a person's application for the mortgage, loan, debt, or obligation.

2.  with respect to any loan, debt, or obligation between a person and one or more unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

a. repay one or more unsecured loans, debts, or obligations; or,

b. combine unsecured loan, debts, or obligations into one or more new loans, debts, or obligations or otherwise restructure or settle such loans.

E.  **"Seller"** means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide, goods or services to the customer in exchange for consideration, whether or not such person is located in the State of New Mexico.

F.  **"Settling Defendant"** means Ryan Marier, his successors, assigns, affiliates, partners, limited liability companies, corporations, trade names, business names, contractors, and agents or employees, by whatever names they might be known.

G.  **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

H.  **"Telemarketing"** means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate or intrastate telephone call.

5

## ORDER

### BAN ON SECURED AND UNSECURED RELIEF PRODUCTS AND SERVICES

1. **IT IS ORDERED** that Settling Defendant is permanently restrained and enjoined from:

A. advertising, marketing, promoting, offering for sale, or selling, any secured or unsecured debt relief product or service in the State of New Mexico or to any consumer who is reasonably believe to be a full or part-time resident of New Mexico; and

B. assisting others engaged in advertising, marketing, promoting, offering for sale, or selling, any secured or unsecured debt relief product or services in the State of New Mexico or to New Mexico residents, wherever they may be located.

### PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO FINANCIAL PRODUCTS AND SERVICES

2. **IT IS FURTHER ORDERED** that Settling Defendant, his partnerships, corporations, sole proprietorships, officers, directors, agents, employees, agents, attorneys, and all other persons in active concert or participation with him, who receive notice of this Order, whether acting directly or indirectly in connection with advertising, marketing, promoting, offering for sale, or selling any financial product or service, are hereby permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact to any consumer located in the State of New Mexico, including:

A.   the terms or rates that are available for any loan or other extension of credit, including:

(1) closing costs or other fees;

(2) the payment schedule, monthly payment amount(s), any balloon payment, or other payment terms:

(3) the interest rate(s), annual percentage rate(s), or finance charge(s), and whether they are fixed or adjustable;

(4) the loan amount, credit amount, draw amount, or outstanding balance; the loan term, draw period, or maturity; or any other term of credit;

(5) the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third party(ies);

(6) whether any specified minimum payment amount covers both interest and principal, and whether the credit has or can result in negative amortization; or

(7) that the credit does not have a prepayment penalty or whether subsequent refinancing may trigger a prepayment penalty and/or other fees.

B.  the savings associated with the loan or other extension of credit;

C.  the ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing current, accurate negative information from the consumer's credit record or history; or

D.  that a consumer will receive legal representation.

## PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO ANY PRODUCTS OR SERVICES

3.  **IT IS FURTHER ORDERED** that Settling Defendant, his limited partnerships, corporations, companies (including UW Processing and Prime Processing LLC), his sole proprietorships, his officers, directors, agents, employees, attorneys, and all other persons in active concert or participation with him, who receive notice of this Order, whether acting directly or indirectly in connection with advertising, marketing, promoting, offering for sale, or selling

7

any product or service, are hereby permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact to any consumer in the State of New Mexico, including:

A.  any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer:

B.  that any person is affiliated with, endorsed or approved by, or otherwise connected to, any other person, government entity, public, non-profit, or other non-commercial program, or any other program;

C.  the nature, expertise, position, or job title of any person who provides any product or service;

D.  the person who will provide any product or service;

E.  that any person providing a testimonial has purchased, received, or used the product or service;

F.  that the experience represented in a testimonial of the product or service represents the person's actual experience resulting from the use of the product or service under the circumstances depicted in the advertisement;

G.  the total costs to purchase, receive, or use, or the quantity of, the product or service;

H.  any material restriction, limitation, or condition on purchasing, receiving, or using the product or service;

I.  any other fact material to consumers concerning any product or service, including any material aspect of the performance, efficacy, nature, or characteristics of the product or service.

8

## SUBSTANTIATION FOR BENEFIT, PERFORMANCE, AND EFFICACY CLAIMS

5. **IT IS FURTHER ORDERED** that Settling Defendant, his partnerships, corporations, sole proprietorships, officers, directors, agents, employees, attorneys, and all other persons in active concert or participation with him, who receive notice of this Order, whether acting directly or indirectly in connection with advertising, marketing, promoting, offering for sale, or selling any product or service, are hereby permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting to any consumer in the State of New Mexico, expressly or by implication, about the benefits, performance, or efficacy of any financial related product or service, unless, at the time such representation is made, Settling Defendant possesses and relies upon competent and reliable evidence that substantiates that the representation is true.

## MONETARY JUDGMENT

6. **IT IS FURTHER ORDERED** that:

A.  Judgment in the amounts below in favor of Plaintiff against Settling Defendant as equitable monetary relief, including restitution and civil penalties as set forth below.

B.  Settling Defendant will pay **$10,000.00** to Plaintiff which Plaintiff will distribute to the New Mexico consumer victims in this case identified in Paragraph 124 of the First Amended Complaint [Doc. 68[1]]. If Plaintiff is unable to locate a consumer to whom restitution is owed, those funds will be sent to the New Mexico Taxation and Revenue Department as unclaimed property of that consumer. Any excess funds from such payments will be retained by Plaintiff for

---

[1] However, consumer Eduwiges R., who was identified in the First Amended Complaint as having paid Defendants $1,553.00, is not owed restitution because forensic accounting has documented that this payment was returned due to insufficient funds.

9

use in consumer protection enforcement and education in the sole discretion of the Attorney General.

   C.     In terms of timing of the payments described above, Settling Defendant will make a payment of $10,000.00 to Plaintiff by certified funds (such as a cashier's check or money order) within thirty (30) days of entry of this Order mailed or delivered by courier to undersigned counsel.

   D.     Should Settling Defendant fail to pay on time, then Plaintiff can return to Court to enforce this Order by motion. Should Settling Defendant fail to pay the amount noted above, he agrees that he shall be liable for an additional $10,000.00 as a penalty. If Plaintiff is unable to locate or serve Settling Defendant after reasonable efforts to do so, filing a pleading in this case shall serve as constructive notice to the Settling Defendant.

   E.     The facts alleged in the First Amended Complaint [Doc. 68] will be taken as true, without further proof, in any subsequent civil litigation by  or on behalf of Plaintiff, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a non-dischargeability complaint in any bankruptcy case.

   F.     Settling Defendant stipulates and agrees that the restitution set forth above *is not dischargeable* in a bankruptcy proceeding.  Further, Settling Defendant stipulates and agrees that the allegations of fact set forth in the initial complaint [Doc. 1] and the first amended complaint [Doc. 68] are true and correct, and establish all elements necessary for a bankruptcy court to conclude as a matter of law that the Settling Defendant is not discharged from the debt set forth above under the provisions of Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C., Section 523(a)(2)(A), and this Order shall be treated for all purposes as having estoppel effect for such purposes precluding those facts from being re-litigated.

G.   Settling Defendant affirms that his Taxpayer Identification Numbers (Social Security numbers or Employer Identification numbers), which Settling Defendant previously submitted to Plaintiff, may be used for collecting and reporting any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

H.   All money paid to the OAG pursuant to this Order may be deposited into a fund administered by the OAG or its designee to be used for equitable relief, including consumer redress, costs of this litigation, and any attendant expenses for the administration of any redress fund.   Settling Defendants have no right to challenge any actions the OAG or its representatives may take pursuant to this Subsection.

## COOPERATION

9.   **IT IS FURTHER ORDERED** that Settling Defendant must fully cooperate with representatives of the OAG in this case and in any investigation related to or associated with the transactions or occurrences that are the subject of the initial complaint [Doc. 1] and first amended complaint [Doc. 68]. Settling Defendant must provide truthful and complete information, evidence, and testimony. Settling Defendant must cause Settling Defendants' limited partnerships, corporations, sole proprietorships, officers, directors, agents, employees, attorneys, and all other persons in active concert or participation with any of them, to appear for interviews, discovery, hearings, trials, and any other proceedings that an OAG representative may reasonably request upon five (5) days' written notice, or other reasonable notice, at such places and times as the OAG representative may designate, without service of a subpoena.

## ACKNOWLEDGMENTS

10.   **IT IS FURTHER ORDERED** that Settling Defendant must obtain acknowledgment of receipt of this Order:

A.  Settling Defendant, within seven (7) days of entry of this Order, must submit to the OAG an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. Settling Defendant must deliver a copy of this Order to (1) all principals, officers, directors, and LLC managers and members of his own companies (including any partners or other owners of that business known as "UW Processing" and "Prime Processing") or any affiliates of those companies; (2) all employees, agents, and representatives of Settling Defendant, who participate in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any financial-related products or services; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  For all others subsequently appointed, contracted, or hired over the next ten (10) years, delivery must occur before they assume their responsibilities.

C.  From each individual or entity to which Settling Defendant delivers a copy of this Order, Settling Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

D.  Settling Defendant must submit to the OAG notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Settling Defendants within fourteen (14) days of its filing.

E.  Any submission to the OAG required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C., Section 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on _____ " and supplying the date, signatory's full name, title (if applicable), and signature.

12

F. Unless otherwise directed by an OAG representative in writing, all submissions to the OAG pursuant to this Order must be emailed to dkramer@nmag.gov or sent by overnight courier (not the U.S. Postal Service) to David C. Kramer, Assistant Attorney General, Consumer Protection Division, 111 Lomas Blvd NW, Suite 120, Albuquerque, NM 87102.

## RECORD KEEPING

11. **IT IS FURTHER ORDERED** that Settling Defendant must create certain records for two (2) years after entry of this Order, and retain each such record for five (5) years. Specifically, Settling Defendant must create and retain the following records:

A. accounting records showing the revenues from all goods or services sold;

B. personnel records showing, for each person providing services, whether as an employee, contractor or otherwise, that person's name, address(es), telephone number(s), job title or position, dates of service, and (if applicable) the reason for termination.

C. records of all consumer complaints and refund request, whether received directly or indirectly, such as through a third party, and any response;

D. all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the OAG; and

E. a copy of each unique advertisement or other marketing material sent into New Mexico .

## COMPLIANCE MONITORING

13. **IT IS FURTHER ORDERED** that, for the purpose of monitoring Settling Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.  Within fourteen (14) days of receipt of a written request from a representative of the OAG, Settling Defendant must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The OAG also is authorized to obtain discovery, without further leave of Court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69 to obtain compliance with this Order and enforcement of this Order.

B.  For matters concerning this Order, the OAG is authorized to communicate directly with Settling Defendant as necessary. Settling Defendant must permit representatives of the OAG to interview any employee or other person affiliated with Settling Defendant who have agreed to such an interview. The person interviewed may have counsel present.

C.  The OAG may use all other lawful means, including posing written questions, through its representatives as consumers, suppliers, or other individuals or entities, to Settling Defendants or any individual or entity affiliated with Settling Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the OAG's lawful use of compulsory process for discovery or collection.

## ENTRY OF JUDGMENT

14.  **IT IS FURTHER ORDERED** that there is no just reason for delay of entry of this judgment and that, pursuant to Federal Rule of Civil Procedure 54(b), the Clerk immediately shall enter this Order as a final judgment as to Settling Defendant Arman Khourshidian.

## RETENTION OF JURISDICTION

15.  **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

_____
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

HECTOR H. BALDERAS
NEW MEXICO ATTORNEY GENERAL


David C. Kramer, Assistant Attorney General
111 Lomas Boulevard NW, Suite 120
Albuquerque, NM 87102
505-222-9100
dkramer@nmag.gov
Attorney for Plaintiff State of New Mexico, *ex rel*
Hector H. Balderas, Attorney General of New Mexico


Arman Khourshidian AKA Aaron Khor AKA Mike Khor


All other parties provided a copy of this Order via CM/ECF service or U.S. Mail.

16